* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence and amend the opinion of award. Accordingly, the Full Commission affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Donovan.
 EVIDENCE
1. The parties stipulated to the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records.
 b. Stipulated Exhibit #2: Plaintiffs average weekly wage (submitted subsequent to the hearing before the Deputy Commissioner by letter dated April 13, 2006).
 c. Subsequent to the hearing before the Deputy Commissioner, the parties submitted additional medical records that are hereby incorporated into the record as an addition to Stipulated Exhibit #1.
2. In addition to Stipulated Exhibits, the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Recorded statement
 b. Defendants' Exhibit #2: Receipt of employee's handbook
 c. Defendants' Exhibit #3: Second recorded statement
 d. Defendants' Exhibit #4: Interrogatories
3. The following individuals testified at the hearing before the Deputy Commissioner:
 a. Christine Hendrickson
 b. Gerald William Marks
 c. Christopher Carlton Wise
2.The following depositions were received into evidence following the hearing before the Deputy Commissioner:
 a. Dr. Lynn Johnson
 b. Dr. Ellis Tinsley, Jr.
 c Dr. R. Mark Rodger
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly denominated in the caption.
2. An employee-employer relationship as defined by N.C. Gen. Stat. § 97-2(2) existed between the plaintiff and defendant-employer on or about December 1, 2003, and October 18, 2004.
3. Defendant-employer Southco Distributing Co., Inc., was insured for workers' compensation coverage by defendant-carrier Zenith Insurance Company on December 1, 2003, and October 18, 2004.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. All parties are properly before the Commission for hearing and the Commission has jurisdiction of the parties and the subject matter.
6. Subsequent to the hearing before the Deputy Commissioner, the parties entered into a stipulation that plaintiffs disability compensation rate for the alleged December 2003 injury is $527.12 per week. Plaintiffs disability compensation rate for the alleged October 18, 2004, injury is $554.65 per week.
7. The issues for determination are:
 a. Whether plaintiff suffered compensable injuries while working for defendant-employer in December 2003 (I.C. No. 445285) and/or on October 18, 2004 (I.C. No. 474522).
 b. If so, to what benefits plaintiff is entitled.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and the reasonable inferences drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old and had a twelfth grade education. She began working for defendant-employer in September 2002 as a Health and Beauty Aide (HBA) division distributor.
2. Plaintiffs job required her to go to defendant-employer's depot in Jacksonville approximately twice weekly to pick up products for distribution to various stores. The products included snacks, foods, drugs, small oils, and similar products typically found in convenience stores. The products were contained in totes (plastic bins) weighing between 50 and 100 pounds and stacked between three and seven high. Plaintiff would sort the products, load the van, which is owned by defendant-employer, drive the van to each location, and unload the goods at the location. Plaintiff earned money based on salary plus commission and was in charge of approximately 30 stores. Plaintiff primarily worked alone.
 I.C. No. 445285
3. Plaintiff contends that she was injured sometime in December 2003, while picking up goods at defendant-employer's depot. In attempting to retrieve a tote from the top of a stack, plaintiff had to climb an adjacent stack of totes in order to reach the desired tote. Plaintiff was holding the tote over her head and attempting to climb down when she felt something pull in her stomach. Plaintiff testified that she immediately reported the injury to Gerald Marks, defendant-employer's HBA supervisor and plaintiffs division head. Plaintiff testified that Mr. Marks witnessed the injury. Mr. Marks testified that he did not recall witnessing the incident and that plaintiff did not report the injury to him. Plaintiff maintains that she also told her direct supervisor, Sammy Crocker, of the injury.
4. A few days after the incident, plaintiff noticed a walnut-sized lump in her abdomen, which eventually grew larger. Plaintiff testified that she presented to her family physician, P.A. Sondra McKellar, who sent plaintiff for tests, including an ultrasound and an MRI. Plaintiff further testified that she was unable to obtain the tests due to difficulties having her insurance card accepted.
5. The medical records do not reflect a visit to Ms. McKellar prior to April 13, 2004; however, the note from that visit reflects Topsail Family Medicine and Urgent Care's difficulties with plaintiffs insurance carrier, lending credibility to plaintiffs claim. In addition, defendant-employer's Administrator of Health Insurance and Workers' Compensation Insurance, Chris Wise, testified that he had numerous conversations with plaintiff regarding ongoing complaints of "urgent female problems" between December 2003 and June 2004. Mr. Wise noted plaintiffs difficulty in getting her primary care physician accepted by the carrier and he further noted plaintiffs growing frustration with the process. Mr. Wise testified that he was finally able to obtain approval for plaintiffs treatment with Ms. McKellar in April 2004. This testimony supports plaintiffs explanation for the failure to obtain immediate medical attention.
6. Based upon the testimony of plaintiff and Mr. Wise, along with the pertinent medical records, the Full Commission finds plaintiff's testimony regarding the reason for her failure to seek immediate medical attention to be credible. Further, plaintiff's testimony that she believed her supervisors knew of the incident and therefore was unaware of any further need to comply with reporting requirements is taken as credible and reasonable under the facts of this case. Lastly, defendants have neither shown nor alleged any prejudice resulting from plaintiff's delay in reporting the injury as work related.
7. The note from April 13, 2004, also references a "mass RLQ" and instructs plaintiff to return in the near future for labs and other tests. Plaintiff returned to Ms. McKellar on May 28, 2004, where a "tender, firm oblong mass R pelvic area" was noted. The etiology of the mass was "to be determined." Ms. McKellar eventually referred plaintiff to vascular surgeon Dr. Ellis Tinsley.
8. Plaintiff presented to Dr. Tinsley on June 15, 2004, with complaints of sharp off-and-on right inguinal pain and a right inguinal bulge. Dr. Tinsley did not record a history of plaintiff's condition and was unable to recall whether she gave one. Dr. Tinsley diagnosed plaintiff with a symptomatic right inguinal hernia and recommended laparoscopic hernia repair surgery. The surgery was performed on June 23, 2004, and plaintiff was written out of work beginning on that date. Dr. Tinsley continued to treat plaintiff through July 6, 2004, when plaintiff was released to gradually return to her regular diet and activity and return on a per need basis. On August 2, 2004, Dr. Tinsley released plaintiff to return to work.
9. However, while Dr. Tinsley noted that people who perform lifting and heavy physical activity are more likely to have hernias, he was unable to provide an opinion as to whether plaintiff suffered a hernia as the result of her work duties.
10. Based upon the expert medical evidence and the testimony in the record, the Full Commission finds insufficient evidence to support a finding of fact that plaintiff suffered a right inguinal hernia as a result of a lifting incident arising out of and in the course of her work for defendant-employer in December 2003 (I.C. No. 445285).
 I.C. No. 474522
11. On October 18, 2004, plaintiff was working her normal route and had reached her last convenience store of the day, in Maysville, North Carolina. She began pulling totes out of the van. Plaintiff testified that grocery totes typically weigh as much as twice the weight of totes carrying HBA products. When plaintiff pulled a large grocery tote out of the van, she felt a popping. Plaintiff initially believed the popping was in her stomach because the pain went across her side and down into her leg and foot. Following the injury, plaintiff completed her job duties with the assistance of the store maintenance man.
12. Plaintiff called her current supervisor, Mr. Paul Lucas, and informed him of her injury. Approximately one hour later, Mr. Marks called plaintiff and she informed him of the injury. Plaintiff has not returned to work since that time.
13. In the evening of October 18, 2004, plaintiff presented to New Hanover Hospital. They referred her back to Dr. Tinsley, and plaintiff presented to him on October 19, 2004. Plaintiff gave a history of experiencing severe right lower quadrant pain while lifting a product at work. Dr. Tinsley believed plaintiff had suffered a new injury involving a strained muscle. Dr. Tinsley prescribed medications, heat and an avoidance of lifting, and scheduled a return visit in three months.
14. Plaintiff returned to Dr. Tinsley on January 18, 2005, with continuing pain that was radiating into her upper thigh. Dr. Tinsley opined that plaintiff did not have a recurrent hernia and tried to refer plaintiff to a pain clinic for further treatment. However, plaintiff experienced difficulty in obtaining consent from defendant-carrier for the recommended treatment.
15. On April 26, 2005, plaintiff presented to anesthesia and pain medicine expert Dr. Lynn Johnson at Pitt County Memorial Hospital. Plaintiff complained of pain in her abdomen, going down into her right inguinal area, into her right leg to the level of her ankle. Plaintiff gave a history consistent with the above-described incident of October 18, 2004. Following an examination, Dr. Johnson's Physician Assistant opined that "there were exacerbating factors that kinda went along with possibly a spinal origin for her complaints." The diagnosis was a possible entrapment neuropathy of the inguinal nerve in the right groin. Plaintiff was scheduled for a nerve block in the right groin.
16. The nerve block was successful in that the nerve was numbed; however, it did not relieve plaintiff's pain. As a result, Dr. Johnson opined that plaintiffs pain was spinal in origin and ordered appropriate tests. An EMG was performed that showed a mild right L5 radiculopathy. An MRI study showed a right disk protrusion at L5-S 1, which Dr. Johnson opined was compatible with plaintiff's symptoms. Plaintiff was given a series of three epidural steroid injections, the first two of which were approximately 80% successful. Dr. Johnson opined that this was further evidence in support of the diagnosis of radiculopathy.
17. On December 20, 2005, two months after the third injection, plaintiff was reevaluated and offered an additional series of injections to begin after the Christmas holidays. Possible referral to a spinal surgeon was also discussed. Plaintiff did not return to Dr. Johnson.
18. Based upon his treatment of plaintiff and the history he received, Dr. Johnson opined that in October 2004 plaintiff suffered a disk injury while lifting a box at work. Dr. Johnson further opined to a reasonable degree of medical certainty that the pain suffered by plaintiff was related to the injury she sustained on October 18, 2004.
19. On January 27, 2006, plaintiff presented to orthopedic surgeon Dr. Mark Rodger with complaints of back and right leg pain. Plaintiff gave a history consistent with the above-described injury of October 18, 2004. Dr. Rodger examined the MRI and opined that it suggested the possibility of a ruptured disc or herniation on the right at the L5-S1 level. Based upon the history provided by plaintiff, Dr. Rodger opined that plaintiff injured her disc at work and that was the cause of her symptoms.
20. Dr. Rodger ordered a CT myelogram to determine whether plaintiff had a nerve compression. Upon his review of the CT, Dr. Rodger opined that plaintiff did not have any physical pressure on the nerve that could be successfully removed by surgery. He further opined that there were two possibilities for plaintiffs continuing symptoms: (1) that she ruptured a disc as a result of the work injury that had healed but left her nerve chronically damaged, or (2) that she had never ruptured a disk and her symptoms were the result of something irritating the nerve, possibly facet disease. Dr. Rodger noted that should option (2) be correct, it still could be the result of the work-related injury, and he specifically opined that plaintiffs work-related injury of October 18, 2004, was the cause of her current condition whether it was an injured disc or an aggravation of facet arthritis in the lower lumbar spine. Dr. Rodger referred plaintiff to a rehabilitation physician to whom plaintiff had not yet presented at the time of Dr. Rodger's deposition.
21. Dr. Rodger wrote plaintiff out of work from January 27, 2006, through February 23, 2006. He did not provide further out-of-work notes, but has not released plaintiff to return to work. He referred plaintiff to a pain-management doctor; however, there is no indication that plaintiff has been receiving treatment. Dr. Rodgers gave plaintiff a 5% permanent partial disability rating to her back; however, he opined that plaintiff has not reached maximum medical improvement. He further opined that plaintiff would continue to suffer the same degree of pain and the same degree of disability. Before Dr. Rodgers would attempt to quantify plaintiffs ongoing level of disability, he recommended that plaintiff undergo a functional capacity evaluation.
22. Based upon the greater weight of the expert medical evidence and the testimony in the record, the Full Commission finds that, on October 18, 2004, plaintiff suffered a work-related injury arising out of and in the course of her employment with defendant-employer which resulted in an injury to her lower back (I.C. No. 474522).
23. As a result of the October 18, 2004, injury, plaintiff has been temporarily totally disabled beginning on October 18, 2004, and continuing.
24. Plaintiffs compensation rate for the alleged October 18, 2004, injury is $554.65 per week.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. For an injury to be compensable, it must be an injury by accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6). "Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). "Could" or "might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
2. Plaintiff has failed to meet her burden under Click andYoung to show that the inguinal hernia surgically repaired in June 2004 was sustained as an injury by accident arising out of and in the course of her employment in December 2003 (I.C. No. 445285). N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has met her burden under Click and Young to show that, on October 18, 2004, plaintiff suffered a work-related injury arising out of and in the course of her employment with defendant-employer which resulted in an injury to her lower back (I.C. No. 474522). N.C. Gen. Stat. § 97-2(6).
4. As a result of the compensable injury of October 18, 2004, plaintiff is entitled to temporary total disability compensation at the rate of $554.65 per week for the period beginning on October 18, 2004, and continuing. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury of October 18, 2004, as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $554.65 per week for the period beginning on October 18, 2004, and continuing until plaintiff returns to work or until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Counsel shall receive 25% of the lump sum payment of compensation. Thereafter, every fourth payment shall be made directly to plaintiffs counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendants shall pay the costs.
This the 3rd day of January, 2007.
 S/___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER